Thank you Mr. Clerk, Mr. Wilson, you're ready to proceed. May it please the court, counsel. Ryan Wilson on behalf of Bradley Kindhart for the Office of the State Appellate Defender. Bradley Kindhart was convicted of unlawful possession of methamphetamine because he allegedly possessed an amount of methamphetamine so minute it was unweighable. The state argued that Bradley was guilty under a theory of either constructive or actual possession of methamphetamine found in a pipe in Bridget Scurvin's home. However, in order to meet its burden, the state was required to establish that Bradley knowingly possessed this methamphetamine. It attempted to meet this burden by examining a lab technician who testified that she received the pipe, but the substance inside was so small it was unweighable. She put a menthol solution in the pipe, swirled that around, and then ran the solution through a series of what I would call highly scientific tests. Only then was one of the pieces of lab equipment able to confirm that methamphetamine was present in this pipe. Mr. Wilson? Could I interrupt you and ask a question specifically as to that point because I believe I've gleaned from your brief that an argument that it was incumbent on the state to establish that the residue contained methamphetamine, that it would be insufficient for the state to establish that the defendant put methamphetamine into the pipe and smoked it, but it had to establish that whatever was contained in the residue still contained methamphetamine. Is that your argument? The argument is that in order for the state to meet its burden, it had to establish that it contained methamphetamine. I would argue that when somebody puts a substance into a pipe, whether that is cocaine, methamphetamine, whatever it might be, and smokes that, they believe that once they're done smoking, all of that substance is gone, that it's been completely consumed in smoke. There's no evidence in this case that Bradley didn't think that regarding this methamphetamine if in fact, and I should add a caveat, if in fact the state established that he actually constructively possessed the pipe, if he constructively or actually possessed the pipe, it was incumbent on the state to prove that Bradley would have known that that pipe still contained methamphetamine. Does that answer your question? Yes, I think so, because, and correct me if I'm wrong, but you're saying that the state had to prove that he knew or should have known that the residue continued to contain methamphetamine. I would add, that's correct, I would add to that. I think the state also should have to prove that Bradley knew that there was residue in the pipe. The technician testified that there was no weighable amount of residue in the pipe and that as a result, she had to engage in, again, the scientific test of filling it with this liquid solution, sloshing that around, running it through her chemical analysis equipment, and only then did one of the tools that she was using give a positive indication for methamphetamine. In my mind, the question in this case is, if a lab technician has to go to that extent, has to rinse the pipe with the solution, run it through these two or three tests, and then wait for another piece of lab equipment to confirm that methamphetamine was present, how on earth could Bradley have known that methamphetamine was present in that pipe? He couldn't have. Well, because he used it, and he knew what he had used in it, that's how he would know. Right. Well, the evidence that he had used the pipe was disputed at trial. I take it you're referencing the officer's testimony. Yeah, it just seems like to me you're putting an extraordinary burden on the state with regard to knowledge under your example. What if someone had cocaine in the house and then decided to get rid of it, and some accidentally spilled out while they're carrying it out, and they get rid of it, and then that's found? Would your argument be they didn't know it was in there, and therefore they would be exonerated? It would be that the state didn't establish knowing possession. If that's what the statute requires, that's what the state would have to prove. It's not, you know, the burden is set forth by the statute in this case to show knowing possession. That's what we're alleging that the state failed to do in the instant case. So someone knowingly possesses a controlled substance and they think that they have disposed of it, they have not done so successfully, and then it's whatever they didn't dispose of successfully is found on their premises. They wouldn't be guilty of having knowingly possessed a substance. That's your theory. That is my theory. There's also, in the briefs I cited to the, and I'm not sure how to say it, the Comage or the Comage case, it's a case from this court where the defendant was arrested, taken to a police station. When he was taken out of the police car, they found a smoking pipe under the seat. In that case, the defendant admitted that the pipe was his, admitted that there was residue in the pipe, and admitted that he'd used the pipe to smoke before. He said, I've even smoked during the day of my arrest, albeit not from that same pipe. He made, he ultimately was convicted and made some arguments regarding the jury instruction issues. He also made a reasonable doubt argument. This court reversed on the jury instruction issues, but found that in order to determine whether or not the defendant should be retried, it needed to look at the reasonable doubt argument. In evaluating whether the defendant knowingly possessed the residue that was in that specific pipe, this court didn't say, well the defendant admitted to the officer that the pipe was his and that there was residue in it and that the defendant had smoked out of that pipe before. What this court said was, we will find the defendant, we will convict the defendant or affirm the defendant's conviction based on the presence of that residue that he stipulated to at trial. It didn't rely on what he told the police officer. It was whether the defendant had knowing possession of that residue. That's what we're arguing in this case that the state failed to establish. Now the state has argued that Bradley's conviction should be affirmed because during trial an officer testified that Bradley admitted smoking methamphetamine from that pipe. Well, there's problems with that theory as well. There was no evidence other than the officer's testimony that Bradley ever made these statements. In fact- Can I stop you there? Assuming everything is accurate and the state is correct about that, would that be sufficient here to establish possession? It would not because even with the officer's testimony, if that testimony is accepted as true, there would not be sufficient evidence to demonstrate that Bradley knowingly possessed the methamphetamine that was in the pipe. And why not? Because again, if he possessed that pipe and used that pipe to smoke the methamphetamine, I think it's a reasonable inference that he believed, I've smoked all of the methamphetamine that was in the pipe and therefore none remain. Well, what about at the time of the smoking of the methamphetamine, which he said he used it that morning? Wouldn't that time frame establish possession? I've never seen a case- Well, first of all, there might be a corpus velecti problem with that. I really hadn't put too much thought into that. But you cannot base a conviction solely on a defendant's admission. Certainly, at trial, the state relied both on the statement that Bradley allegedly gave to the officer and on the residue that was found in the pipe. So the state believed that both were necessary. I don't know that I've ever seen- Doesn't the residue in the pipe corroborate his statement? So that you don't have the corpus velecti problem? It's not just his statement, there's also residue. I'm not sure that it would verify the knowing element of the statement, or the knowing element of the state's requirement to show the knowing possession. But even if the officer's testimony is accepted as true, we've got this other problem with- Well, I think what Justice Harris is saying, the possession occurred that morning when he smoked the meth. The residue corroborates his confession to possessing it at that time. I guess my response to that would be, even if we accept the officer's testimony as true, we have the problem, that being the second part of the argument that Bradley has raised here, which is, this is nothing if it isn't a closely balanced case. Where we have, as our discussion thus far in debating this issue has shown, we have the testimony of the police officer saying, Bradley told me he smoked methamphetamine earlier in the day. Versus Bradley's trial testimony, that no, I never told the officer that. And the fact that no fingerprints or DNA were found on the pipe, that it wasn't tested for those things. No evidence that anyone saw Bradley smoke from that pipe. And in fact, there's a fact in this case that I think can be really easy to overlook. So I want to point it out before I forget it. And that is, during jury deliberations, the jury sent out a note saying, was the defendant tested for drugs in this case? And the judge sent back a response and said, you've heard all the evidence, please continue with your deliberations. Now, ordinarily that might not seem that big of an issue. But in this case, it's a reasonable inference that had the jury out and out believed the officer's testimony, and didn't have any question about the officer's testimony, it would have been irrelevant whether Bradley had been tested for drugs, or whether there was a positive drug test result. The jury was asking that, it seems to me, because the jury had some question regarding the nature of the officer's testimony, and whether it was actually truthful. And so that jury question, I think, highlights the closely balanced nature of the evidence in this case. But if we're going to consider the evidence at all, we have to consider it in light of what was actually said during the state's closing argument. The state, in this case, did something it was not allowed to do. It placed its thumb on the scale of credibility, something that the jury is supposed to be left to decide. There are, I don't think, any dispute that the state may comment on the facts and the evidence and the reasonable inferences that come there from. But if a reviewing court finds that the prosecutor's improper conduct may have contributed to the defendant's conviction, it must order a new trial, and that's what we're arguing happened here. And I would say that there are three different things that the state did during its closing argument, all of which are improper, and all of which would require a new trial. The first of those is, the state, throughout its closing argument, reminded the jury, over and over and over again, that its witnesses were sworn law enforcement officers of significant experience, and at times would say, who would not lie through their teeth to frame an innocent person. But the state went even further than that. It said, and I quote, unless we all want to, and this is after the defense's closing argument, the state says, unless we all want to buy what the defendant's trying to sell, and that is, again, that two sworn law enforcement officers would come in here, not only commit a farce, but a miscarriage of justice to convict an innocent man, versus what he just told you, I think the answer to the credibility issue becomes quite clear. The state is not allowed to comment on the credibility of its witnesses. It's not allowed to say, I know that you just heard everything that the defense attorney just said, but remember, my law enforcement officers came in here and testified. They wouldn't lie through their teeth. Wait, wait, you said the state's not allowed to comment on the credibility of their witnesses? The state can make, can comment on credibility as long as it is tied to facts, evidence, and reasonable inferences therefrom. What it's not allowed to do is to come in and say, I have law enforcement officers, they've testified, they wouldn't lie through their teeth. I think the answer to the credibility issue becomes quite clear. It can't personally vouch for the credibility of its witnesses. What did the defense argue during their closing argument? That the, Bradley did not make the statements that the officers had attributed to Bradley. So then that the officers were lying. And that is a, if the state came back in and said, why would these officers frame Bradley? Or why would these officers lie to convict Bradley? I wouldn't be making this argument. But what happened in this case was, again, you have this repeated over and over again, reference to the fact that they're law enforcement officers, significant experience. I think the answer to the credibility issue is quite clear. And a similar issue was reviewed in this People v. Rogers case. There, while examining a similar issue, they said that the statement taken in context was used by the prosecutor to improperly interject his personal views and improperly bolster the credibility of the testimony given by the police officers. The state can't vouch for the credibility of these officers. But once, you're talking about the rebuttal argument. Correct. The credibility was attacked in the defense of the closing argument. Correct. The state has a right to come back and talk about the credibility of their witnesses versus the credibility of the defendant who testified. They can ask the jury to find, again, they could say, why would these officers lie? This court in a case, Killen. Well, the jury knows that they're law enforcement officers. The jury knows their experience. So what exactly was objectionable about what the state said? The fact that it was the state's attorney that was saying, I think the answer to the credibility issue is quite clear. And the repeated reference over and over again to the fact that they were You think that's error for a state's attorney to say the credibility issue is quite clear? No. I think the credibility issue is quite clear. Where they're making But he's offering his opinion. Correct. Oh, I see. Correct. But then he doesn't belong to say what he did. Right. Well, but I think it's a reasonable inference after he said, we have the sworn police officers that are coming in. I think the credibility issue is quite clear. I think the jury is going to think, oh, they're police officers. We should give them, you know, benefit of the doubt. Another point. The cases that you cite too, where the courts found that it was improper bolstering of the credibility. Didn't the state also identify a particular consequence or ramification that would have occurred if the officer was found to have perjured himself? And that didn't happen here. That's correct. There are cases that say that. I don't read that as a determining factor of whether or not it constitutes error or not. But to take it a step further, the state, again, made another set of comments that are improper. The state told the jury, essentially, you should believe our witnesses because if they had wanted to lie, they could have come in and told more grandiose, better lies that would have gotten the defendant in more trouble. Now, generally, I don't read from portions of the transcript. I'd like to do that here just very briefly to highlight the statements that I'm talking about. During its closing argument, the state said, if they're lying through their teeth, they really and should have really done a better job gilding the lily, shouldn't they? For instance, you know, instead of just one piece of mail that Cody Cook found and photographed for you and acknowledged it didn't contain the address of the place where he was that morning, he could have and should have said, there were tons, tons of stuff here. I just couldn't, I just didn't photograph it. I saw it. Then it says later, but that's not all, you know, both of them, Agent Frazier and Agent Cook could have come in and said, you know, that place reeked of meth. You couldn't hardly breathe. We need a gas mask. There was so much meth odor in here. You know, if they really wanted to do him in, I think they probably should have said that. If they were inclined to lie about it, might as well throw that in too. Mr. Wilson, if you were trial counsel, what would your objection have been? It would have been an objection that the state is improperly bolstering the credibility of its witnesses by arguing that had they wanted to lie, they would have told bigger lies. Is that bolstering? Yeah, or yes, pardon me. And what we can look at is the People v. Fields case. There, the state said, wouldn't you think if the defense or the police were part of this big frame-up, they'd do a better job for Christ's sake? Wouldn't they put a little more beef into it? Wouldn't they at least say to the defendant, yeah, we recovered the knife. This is the knife. This is the purse she had on her shoulder. The defendant confessed to everything. Of course they would have if it was a frame-up. The police came in here and told you exactly what happened, the truth. That is what happened. The appellate court found that those comments were highly improper in that case. Those are very similar to what we have in the instant case. And I'm curious, the appellate court in that case, on what basis did they find them to be improper? I don't recall if the court said what specific problem they had with those statements other than that they were highly improper. The court went on to reverse on a separate ground. So... Wasn't it the perjury that was the perjury charge? I don't recall if that's what it was or not. I'm sorry for not remembering that, Justice Pope. But what we have here is a situation very similar to what was in Fields, where the court said that these comments are very improper. Again, they're not comments on facts or evidence or inferences therefrom. It's comments on, believe my witnesses, had they wanted to lie, they could have told better lies. That's improper. Counsel, the state here said that the... In arguments with the jury, credibility of witnesses, that's for you, jurors, to determine. And then he went on to say, And the judge is going to tell you in deciding that, that means credibility, you have some tools available to you. And that is, you may, in deciding the credibility of a witness, take into consideration a person's bias, a person's interest in the outcome, their recall, their attitude about testifying, and the reasonableness of their testimony. Doesn't that cure any of the alleged improper comments that you're asserting the state made? It doesn't because those instructions infer that the jury is considering those factors, the bias and the motive and all of those things, based on the proper argument that's been presented to them and the facts and evidence that have been admitted in the case. Where you have a state's attorney coming in and bolstering the testimony of his witnesses, it adds prejudice to the case. The final thing before my time expires, the state also impugned Bradley's character in this case. It wasn't content with bolstering its own witnesses. The state said, at least the defendant should have the courage to get up and say they're lying to you. Well, I'm going to submit to you. He doesn't have the courage to say that because he can't bring himself to say that. Bradley didn't have a requirement, there's no requirement that he even testify, let alone a requirement that he get up and call police officers. He did testify. But there's no requirement that he get up and call police officers a liar. That's supposed to be left to the jury in this case. It's supposed to be left to the inferences based on the jury's assessment of evidence and the facts that have been elicited. And in this case, where the evidence is so closely balanced, it constitutes a reason for reversal. So I would argue that his conviction should be vacated or his case remained for a new trial. Thank you, counsel. You'll have rebuttal. Ms. Sheppard. May it please the court, counsel. In fields, the portion of fields that the closing counsel just quoted about the frame-up, the appellate court in fields said that    So I would argue that the defendant in fields claimed that he was a victim of a conspiracy or a frame-up. So those comments were problematic because the prosecutor was talking about a frame-up and there was no defense of a frame-up. Here, we clearly have that. The defense was that the police had lied and that they were somehow framing defendants. Defense counsel even argued in closing argument that there was some discrepancy between the appearance of the pipe in the photo and its actual appearance. So that was the defense. And that was what makes many of these comments in closing argument with the prosecutor perfectly fine. Because when the cases hold, when the issue is one of credibility, when the defendant is arguing that he was framed or that the state's witnesses have lied, it's perfectly proper to talk about to address those matters of credibility. And as far as the gilding of the Lilly comments, fields, for the reason that I just stated, would not support a ruling that those were improper. I would point out that in Curry, this court found permissible a number of comments, extensive comments, saying, why do you think that the police officer lied? Why would the police officer get up and say all these things? What possibly would be the motive for that? As far as the references to the sworn police officers, there were only three references. And this court in Killen found that it's perfectly fine to make those references in closing argument to the prosecutor to do that. As far as the comment that the defendant lacked the courage to get up and say they're lying to you, again, because the defense was that the police were lying, then that was something that was proper to address. Also, the defendant did testify, as you pointed out, Justice Cooke. The prosecutor could comment on what he did not say when he testified. And also, the defendant did testify that if part of his conversation with Special Agent Cooke was described in a police report, it came out of thin air. So basically, he was testifying that that was a lie. And so that was proper comment on that testimony. And as to whether or not the evidence is close, of course, that only goes to Issue 2, these issues of whether or not the prosecutor's comments were improper. And we would say that it wasn't close. Defendants did make statements to Officer or Special Agent Cooke. There's a question, he did get up and testify and say that I never made those statements, but there were many improbabilities in his testimony, including that somehow he agreed to audiotape the conversation, but not videotape it. And also, they asked what did you say in this conversation, and he never said what he actually did tell the officer in the conversation. I'd like to ask you a question in regards to the residue argument made by Mr. Wilson. If this case was a case involving only a defendant being charged with possession based on the residue in the pipe, putting aside any statements that he made to police officers about having previously smoked, but simply that they found the pipe and that it was in close proximity and it contained the residue that was found by the state chemist, would that be sufficient proof of the charge here? If I'm understanding your question correctly, Your Honor, it sounds like you're saying that taking out the evidence that he admitted that he had smoked the meth. Correct. So that the only evidence is the pipe with the residue in close proximity to the defendant such that it could be established that he constructively possessed it. That would be a harder case than what we have here. So part of this, you're acknowledging that the case isn't totally dependent on the proof of the residue. It's in conjunction with his statements that he had smoked that morning, that he had used the pipe and that he was surprised that they were concerned about such a small amount of methamphetamine, that it's those statements that established proof that he in fact had smoked methamphetamine in addition to finding the pipe that contained the residue. Is that right? I think that I could conditionally agree with that. Let me just ask it very clearly. What is the evidence that supports the conviction for possession of methamphetamine here? His statements, and this is the evidence that the cases do address, Comage and Kabat and those cases, it is important in those cases, and we do have that evidence here, and even stronger evidence than in those cases, that a defendant who admittedly smokes some controlled substance is expected to know that some portion of that controlled substance remains in the residue. I'm sorry. If you could just identify pieces of evidence, be testimony, be physical evidence, but what evidence establishes proof beyond a reasonable doubt of the defendant's possession of methamphetamine? The pipe was found in the drawer next to him. He stated to Officer Cook that he used that pipe that very morning, within minutes of when the police arrived, to smoke methamphetamine. Comage does state that it's reasonable for the jury to infer that a defendant who has used controlled substance and smoked it that he would know that whatever residue is left would contain a controlled substance. His admissions is a much stronger case than Comage and it's not as distinguishable as well. I mean, in those cases, and in this case we have something that this court in Comage noted and was not present in Kabat that absent exceptional circumstances, a defendant would be expected to know that when he smokes a controlled substance that something remains of that controlled substance in the residue. And in Kabat, a case that opposing counsel relies on, the Wisconsin case, the defendant said, yes, I had used this pipe a long time ago and I cleaned it out. And so we not only had the extraordinary circumstances of his cleaning it out, cleaning out the pipe, but also there could have been other people who had used the pipe in the meantime. Here we have, the defendant admitted that he to police, to Cook and Frazier according to Frazier's testimony, that he had used the pipe three times in the last three weeks that the last time that he used it was right before the police arrived that morning and by his own testimony, he arrived at his girlfriend's house, the house that was searched, only 20-30 minutes before police and then he waited around with his friend on the porch for 20 minutes before they realized they could go in the back door, pick some coffee, got a glass of iced tea, sat down. So his own testimony in his statement to police established that it was no more than 10 minutes that he used the meth. And so that time frame is very short and a reasonable, this court has held that that's enough even under more extenuated circumstances where the use and the binding of the pipe with the residue is a longer, farther apart. Yes, the defendant should be expected or a jury could reasonably infer that he would know that there is something of that controlled substance in the residue. So that's certainly enough for reasonable doubt. We would argue that the case is not closely balanced and again that goes to issue two. And also I would point out that in Kamich, the stipulation was that the pipe contained cocaine residue. So the stipulation was not that he knew that there was cocaine in the residue. And that basis on which opposing counsel attempts to distinguish Kamich that he stipulated to the presence of cocaine residue in the pipe that doesn't go to the issue of Kamich's knowledge of its presence. And also opposing counsel says that Kamich is distinguishable because the defendant here testified that he did not tell police that he used meth or the glass pipe. Well of course he did tell police that he did use meth and the glass pipe and that came in through special agent's testimony. So let's see it's not a closely balanced case there clearly was sufficient evidence more than sufficient evidence to establish proof beyond reasonable doubt unless the court has any further questions I just ask that you affirm. I see none, thank you. Is there any rebuttal? There was an interesting theme in response to one of your questions Justice Harris that the state kind of formulated you asked what evidence there was of the possession of the methamphetamine in this case. What specific evidence there was? And the state said well you've got the pipe you've got the defendant's statements to the police you've got his admissions so those are the things the state pointed out. Well all of those things are dependent on whether or not the officer's testimony here was believable.  if you believe the officer's testimony that the defendant said I possessed that pipe earlier in the day. Wasn't it in a drawer in a table or something right by his chair? It was in an end table near the chair or the couch where the defendant was sitting that doesn't mean that he knew it was there there were no fingerprints taken from it there was no DNA establishing that the pipe belonged to the defendant this is a much closer case than the state wants to admit. So if it were in an end table across the room 20 foot away would it be the exact same thing as if it was in the end table right beside the chair he was sitting in? Absent some other evidence that ties him to that pipe, yes it would be. It is again the state's burden to prove actual or constructive possession it's their burden to prove that he knowingly possessed the methamphetamine that was found in the pipe. All of this is dependent on the jury's believing the officer's statement or the officer's testimony that the defendant made a statement implicating himself in this case. This wasn't his home was it? It was not, it was his girlfriend's home. His girlfriend wasn't there? She was there. She was arrested when the police arrived. He was there with another gentleman and they entered the home before the homeowner arrived at some point the homeowner then joined them and she was arrested as soon as the police knocked on the door. So it was somebody else's home, there were other people present there's nothing connecting him to this pipe. It was somebody else's home that he was able to enter on his own because the back door was open and he happened to sit down in a chair right beside the pipe and there's no inference that a reasonable fact finder could make from that? Barring some other evidence, no. If there's nothing else connecting him to the pipe if there were 100 people in that house if there was a pipe found at the convention center here down the street and there were 100 people within a 50 foot radius of that pipe, are all of them guilty of constructive possession? Barring some other fact connecting them to that pipe, the answer is no. And because so much of this case is tied to the jury believing the officer's testimony here that's why the improper comments by the state made during its closing argument are so important. Before you run out of time, I just wanted to ask you about the Cabot case from Wisconsin. That case doesn't seem like it's similar to this case in terms of the facts because in that case you didn't have any acknowledgment and I understand you dispute that and you indicate that that's where the credibility of the witnesses comes in but in this case you have the officer's testimony that the defendant admitted to having smoked earlier that morning using that pipe and that he was suggesting disbelief that they were interested in such a small amount of meth. In this Wisconsin case, it was just the pipe alone and the residue in the pipe that was the basis for the state's charge. You didn't have the supporting evidence consisting of the defendant's own statements. So it doesn't seem like the Wisconsin case and this case are analogous in terms of facts. In Cabot, correct me if I'm wrong, my recollection is the defendant admitted that he had used that pipe in the past. Two weeks prior? Correct. And so we do have an out and out admission by the defendant in that case but one of the important facts in Cabot is essentially what their holding is. In Cabot, the jury said a lay person could not be expected to know whether the burnt material in the pipe still contained ingredients of the controlled substance. How on earth, again, if a lab chemist had to go to these extreme measures to test an amount of a substance that is so small that it's unweighable, are we going to say that Bradley Kindheart knowingly possessed methamphetamine? I don't know how we make the leap there. And so for all those reasons, I'd ask that Bradley's conviction be reversed or that his case be reversed and remanded for a new trial. Okay. Thank you. Thank you. The case is submitted and the court stands adjourned.